## HUNT AND ALS.

### *v.*

## BRENT AND ALS.

(*Special Court of Appeals of Virginia, September, 1877.*)

[Virginia Law Journal, 1877, p. 565.]

**Deed of Trust to Secure Creditors—Delivery—Case at Bar.***

A grantor has a deed of trust prepared, conveying all of his property to a trustee, named therein, to secure his creditors; the deed is acknowledged for recordation, and would have been recorded then, but for the war raging in the section where the deed was executed at the time. The deed is then, with the trustee's knowledge, deposited with a niece of the grantor, who has other important papers of his, she is told by him of its importance, and to take care of it, and the paper remains in her possession until the grantor's death, when it is taken possession of by the trustee, admitted to record by him, and he files a bill for the proper execution of the deed and distribution of the fund. On a cross bill filed by creditors attacking the deed, on the ground that it is void for non-delivery.

**Same—Same—To Third Person—Case at Bar.**

*Held* : That delivery, to the third person, under the circumstances was sufficient, and the deed good.

**Same—Same—Intention of Grantor.**

The intention of the grantor is the true test of what constitutes the delivery. If he executes and acknowledges a deed as his, and either retains it or delivers it, to a third person, though that third person be not the agent of the grantee, it is a good delivery in contemplation of law.

Appeal from circuit court of Fairfax county, Va.

---

*See monographic note on "Deeds of Trust," Va. Rep. Anno.

On the 13th of March, 1862, Joshua C. Gunnell, of the county of Fairfax, a man of extensive business engagements, being involved personally and as security for others, and apprehending serious losses by the war, then flagrant ; after consultation and thought, determined to make a deed of trust conveying all his property for the payment of his own debts, preferring those who stood bound as security for him. He caused the deed to be prepared, making Richard H. Cockerille the trustee therein, and then on the same day went, with the trustee and the draftsman of the deed, before a justice of the peace of Fauquier county, where the grantor was then staying, and duly acknowledged the deed for record, which acknowledgment was certified by the justice on the deed.  Gunnell was then anxious to put the deed on record in Fauquier county at once (Fairfax being in the possession of the enemy, and the law authorizing recordation in adjacent counties not then in their possession), but it being suggested to him that Fauquier would probably be in the possession of the yankees too in a short time, he concluded to, and did then deposit it with his niece, a Mrs. Moss, who then had some of his important papers, telling her of its importance and to take care of it.  And she kept said deed until the death of Gunnell, which occurred in 1864.  He died intestate, leaving a widow, who qualified as his administratrix, and several children.  Cockerille, the trustee, who knew of the deposit of the deed with Mrs. Moss, got possession of it in 1865, after the war, had it recorded in Fauquier and Fairfax counties, and filed a bill in December, 1865, for the proper collection and distribution of the funds to be derived under said deed ; proceedings were had in the cause, to settle the accounts of the trustee, and ascertain the respective priorities of the creditors.  Cockerille resigned the trust and O. W. Hunt and Thomas Moore were appointed in his stead.  John H. Brent and Thomas Stewart, creditors of Gunnell, being dissatisfied with the position assigned them

in the commissioners' report of the debts secured in the deed, filed their cross-bill to set aside said deed, on the ground that it was null and void in this, that it was never delivered "by Gunnell to Cockerille, or to any one else, for the purposes therein set forth." And this was the whole question discussed and decided by the appellate court in the cause. There were other facts in it, but they are not important to be stated. The circuit court held that there was no delivery of the deed and that it was null and void.

*H. W. Thomas*, for the appellants.

*S. F. Beach*, for the appellees.

McLAUGHLIN, J., delivered the opinion of the court.

The only question to be considered by this court is, whether the deed alleged to have been executed on the 13th day of March, 1862, by Joshua C. Gunnell to Richard H. Cockerille, trustee, was duly delivered or not? The deed was written and signed on the day it bears date ; was acknowledged before John H. Klipstein, a justice of the peace for Fauquier county, on the same day, and deposited with Mrs. Martha Moss, a niece of the grantor. The circuit court of Fairfax held that there was no delivery of the deed and decreed that it be declared null and void, and cancelled and annulled. From this decree an appeal has been taken.

Neither a date nor, at common law, even the signature of the party is essential to the validity of an instrument as a deed ; but there cannot be a deed without writing, sealing and delivery. There may, however, be a sufficient delivery without words or by words only, without any act of delivery ; as where a party to an instrument sealed it and declared in the presence of a witness that he delivered it as his deed and yet kept it in his own possession ; but nothing further trans-

pired to qualify the declaration, or to show that he did not intend it to operate immediately ; and so it has been decided that a delivery to a third person for the use of the covenantee is sufficient if the grantor parts with all control over the instrument ; although the person to whom the deed is so delivered be not the agent of the covenantee.   Chitty on Contracts, p. 3 ;  Skipwith v. Cunningham, 8 Leigh 281 ; Garrams v. Knight, 5 Barn. & Cres. 671, 12 Eng. Com. Law Reports 357.

In Wheelwright v. Wheelwright, 2 Mass. R. 452, Ch. J. Parsons says: "If a grantor deliver any writing as his deed to a third person, to be delivered over by him to the grantee on some future event, it is the grantor's deed presently, and the third person is a trustee of it for the benefit of the grantee.   What the nature of the delivery was, whether absolute or conditional, and what was the actual intentions of the parties, are always questions of fact to be settled by the jury where the evidence leaves any doubt upon the subject."   So in Clark v. Gifford, 10 Wendell, Sutherland, J., says : "The cases seem to consider a declaration of the grantor when he executes the instrument or delivers it as his deed, as strongly indicating an intention that it shall take immediate effect.   Such a declaration, however, is, I apprehend, but matter of evidence to be weighed in connection with the other circumstances in the case in order to determine the real character of the transaction."

Where a deed of land is prepared for execution, read, signed by both parties, and acknowledged as their deed before an officer authorized to take acknowledgments, it is a complete and valid deed, notwithstanding the witnesses present at its execution unite in testifying that there was no formal delivery of it, and the deed, after the death of the grantor, be found in his secretary, among his private papers. Scrughan v. Weed, 15 Wendell 545.

I think the authorities fully sustain the doctrine that the intention of the grantor is the true test ; that if he executes and acknowledges it as his deed and either retains it himself or delivers it to a third person, though that third person be not the agent of the grantor, it is a good delivery in contemplation of law.

It appears that at the time this deed was signed and acknowledged, the war was raging, that the residence of the grantor was in possession of the public enemy, that the grantor was heavily involved as endorser or surety for others whose conditions were rendered doubtful by the results of the war, and that he became very solicitous about his own affairs, feared that he would become involved, and was extremely anxious to secure his own debts for which others were bound, then his other debts, to the exclusion of debts for which he was bound as surety or endorser. He had frequently stated beforehand that he was much involved and it was his purpose to make a deed of trust to indemnify his sureties ; that he intended to provide for his own debts in preference to those, for which he was bound as surety, and that if there was anything left, the latter class would get it. He left Fairfax early in March, and stopped in Fauquier. He became exceedingly solicitous to carry out his previously expressed wishes and to have the deed of trust executed. Doubtless his being forced to leave his home and the probable retreat of the Confederate army from Manassas, increased his apprehensions. He applied to his friend, Alfred Moss, on the 12th of March, 1862, to prepare the deed. He was very urgent, and wanted it done at once. Mr. Moss declined that day, but on the next prepared the deed which is the subject of controversy here. He went down to John B. Hunton's office, at Buckland, to do so. Upon his return, he read the deed to Gunnell and Crockerille, and Gunnell said it was just such a deed as he wanted. The name of the trustee had been left blank by the scrivener, but by the di-

rections of Gunnell the name of Richard H. Cockerille was inserted. The deed was acknowledged before Klipstein that evening. A question was then raised as to how the deed should be cared for and preserved. Mr. Gunnell suggested that it should be placed in the clerk's office of Fauquier county for record, but Moss thought not, as there was some talk of moving the records from the office, and suggested to Gunnell to leave it with Mrs. Moss, his niece, that it would be safer in her hands; to which Gunnell assented. He said that by leaving the deed with Mrs. Moss, who had most of his papers, in the event of anything happening to him, Mr. Love would tell her what to do with it.

Cockerille says in his deposition that Gunnell frequently afterwards expressed himself gratified at the deed he had made, that in September, 1862, he came to his house and again spoke of the deed he had made and expressed himself gratified that he had done so; and that the destruction of everything satisfied him that he had done right.

Mr. Graham, another witness, says that he heard Gunnell on several occasions speak of the deed of trust he had made to R. H. Cockerille, trustee; that it was to secure certain parties, and there being no chance to record it he had left it at J. B. Hunton's.

The deed was deposited with Mrs. Moss, who was then at J. B. Hunton's, on the day, or very soon after it was signed and acknowledged. He had previously given her other papers and valuables. When this deed was delivered with other papers he told her they were important and to take good care of them. She retained the deed during Gunnell's lifetime, who died about the first of February, 1865. Upon the application of Cockerille the deed was delivered to him by Mrs. Moss. He had it recorded in Fauquier in March, 1865, and in Fairfax in September, 1865.

I think it impossible, from a careful reading of the evi-

dence, to conclude that Gunnell had any other intention or purpose than to execute a complete deed. His first suggestion was to deposit it in the clerk's office of Fauquier, but was deterred from that by the suggestion that the records might be removed. "There being no chance to record it," as he told Graham, he adopted the other suggestion, to deposit it with Mrs. Moss, who had most of his papers, with the injunction to "put them away and take good care of them." Had he put it on record its delivery would have hardly been questioned. He did the next best and safest thing that occurred. I am, therefore, of opinion that the deed must be considered as delivered and held valid, and the decree of the circuit court of Fairfax ought to be reversed.

Decree reversed.